THOMPSON *vs.* BLACKWELL.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The incorporated limits of the city of New-Orleans, terminate at the edge of the Mississippi river.

In designating boundaries, the word *to,* if unaccompanied by the term *inclusive,* excludes the object *to* which the line runs.

This action was brought by the assignee of a bond for the prison limits of the city of New-Orleans, against the surety.

The defendant pleaded a general denial.

The record contains the following statement of facts, furnished to the court by the parties. "It is admitted that John Blackwell, the principal in the bond on which this suit is brought, went on board of a steamboat lying at the wharf, and in contact therewith, but floating on the river Mississippi, subsequent to the signing of said bond. It is also admitted that the defendant signed the bond sued on, and that said bond was regularly transferred to the plaintiff, and that in case the plaintiff is entitled to recover, the amount claimed in the petition is correct."

On this statement the cause was submitted. Judgment was rendered for the plaintiff and the defendant appealed.

*Hoffman* and *Hill*, for appellant.

*Roselius, contra*, contended that:

1. The breach of the conditions of the bond on which this suit is brought, is shown by the admissions on record. The prison limits are established with those of the city of New-Orleans. *Act of* 1823. *Moreau's Dig. vol.*1, *p.* 575. The limits of the city extend *to* the river Mississippi. *Act of* 1812. *Moreau's Dig. vol.* 2, *p.* 118.

2. If the expressions of this law are at all doubtful, they have been interpreted by the legislature. The law creating

the City Court of New-Orleans, gave that court jurisdiction within the limits of the city, and by a subsequent act its jurisdiction was extended over the whole breadth of the river. *Moreau's Dig. vol.* 1. *p.* 344; *Ib.* 358–9.

3. The appellee is entitled to ten per centum damages for a frivolous appeal.

The opinion of the court, MATHEWS, J. absent, was delivered by PORTER, J.

This is an action against the surety of a debtor who gave bond to keep within the prison bounds of the parish and city of New-Orleans. These bounds according to the act of March 9, 1823, are the whole incorporated limits of the city of New-Orleans. See 1 *Moreau's Dig.* 575.

The breach charged is, that the principal went on board a steamboat afloat in the Mississippi, but which was attached to one of the wharves created by the corporation, within the port of New-Orleans.

The original act of incorporation gave for limits to the city a tract of country from one point to another, beginning at lake Pontchartrain, the lines which close are described as running *to the Mississippi.* The act of 1812, which enlarges these limits, in laying off the wards, it appears to us also gives the same boundaries, for it says the lines which divide them shall commence on the levee; it declares that the parallel lines which close them shall run *to the Mississippi.*

The incorporated limits of the city of New-Orleans, terminate at the edge of the Mississippi. river.

So that the question is, whether the incorporated limits of the city of New-Orleans, terminate at the edge of the water, or extend to and embrace a portion of the river, which will bring a steamboat lying at the wharf within these limits.

The judge of the first instance decided this question in the negative, and the defendant appealed.

In designating boundaries the word *to* if unaccompanied by the term *inclusive* excludes the object to which the line runs.

The judge below decided correctly. The word *to* may it is true be either inclusive, or exclusive, according to the subject matter. In designating boundaries, it is always understood if unaccompanied by the term *inclusive*, to exclude the

object the line is to run *to*. It was no doubt an omission on
the part of the legislature not to embrace the port within the incorporated limits; but courts of justice cannot supply the omission. We have a strong legislative construction of the acts defining the limits of the city which we cannot safely disregard. By an act of February 10, 1821, the port of New-Orleans has certain limits given to it, and it is declared that between the points designated, the port shall include the whole width of the river.

The second section of the act proceeds and enacts, that the police officers and justices of the peace of New-Orleans shall have the same jurisdiction over the port which they now enjoy by law *within the city of New-Orleans.* This act appears to contemplate, that it was necessary to give by law jurisdiction over the port to the city officers. It was clearly unnecessary if the port was already within the incorporated limits. Nor is this provision satisfactorily explained by supposing the city as incorporated, extended over the half of the river, and it was requisite its jurisdiction should be carried over the whole width of the river. It speaks of the whole port, provides for the whole, and it is evidently bottomed on the understanding of that branch of the government, that it was requisite to extend the jurisdiction of the corporation over the whole river, not the one-half of it. This construction is strengthened when we find the legislature give to the city magistrates the same jurisdiction over the port which they now enjoy *within the city.* What is this but saying, that the port was *not* within the incorporated limits of the city? They give the jurisdiction over one place, which is now enjoyed over another.

The rule which makes the middle of a river the dividing line between independant states, where territories lie on each side of it, and the principle that countries lying on a river have the same limits cannot be accurately assimilated to the case before us. The one rests on principle of international law. The other, supposing it sound, and its correctness might be well doubted in a case where the line designated would be declared to run *to* the river, rests on the presumption that

it was not the intention of the law maker to exclude any part of the state from its judicial division, so as to afford an immunity for crimes and offences. But no such necessity exists here for the parish divisions would have effected this object. The limits of corporations are the creatures of positive legislation, and cannot be extended by implication and motives of convenience.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.